Filed 3/13/24  P. v. Boone CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VELTON BOONE,<br><br>    Defendant and Appellant. | B328913<br><br>(Los Angeles County<br>Super. Ct. No. BA326464) |

        APPEAL from an order of the Superior Court, Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

        Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Blythe Leszkay, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Velton Boone appeals from the superior court's order denying a recommendation by the Secretary of the Department of Corrections and Rehabilitation to recall his sentence and resentence him under Penal Code section 1172.1.[1]  Boone argues that, after the superior court declined to vacate his sentence, the court erred in failing to consider reducing his sentence.  Because section 1172.1 does not require the court to consider such a reduction where, as here, the court finds the defendant currently poses an unreasonable risk of danger to public safety, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *A Jury Convicts Boone of Aggravated Kidnapping and Other Crimes, and We Mostly Affirm*

Early one morning in July 2007, Boone and a companion entered a supermarket through the delivery door and pointed their guns at a truck driver in the warehouse.  Either Boone or his companion shoved a gun into the driver's chest.  The two men took the driver to an adjacent room in the back of the store, tied his wrists with a cord, left for a few minutes, returned, untied him, and told him to find the store manager.  After the driver located the manager, Boone and his associate forced the driver and manager to walk to one of the aisles of the store, where two other store employees were trying to hide.  Boone and his companion told all four employees to lie face down on the floor.  Boone ordered the manager to open the store safes and place

---

[1]    Statutory references are to the Penal Code.

$1,800 (the contents of the safes) into a bag in a milk crate. Boone and his companion walked toward the loading dock, but when they discovered the police had surrounded the store, they went back inside.  After a stand-off with the police, officers entered the store and found Boone hiding.  (*People v. Boone*, Aug. 25, 2011, B223335 [nonpub. opn.] (*Boone I*).)

A jury convicted Boone on two counts of kidnapping to commit robbery (aggravated kidnapping) (§ 209, subd. (b)(1)), attempted second degree robbery (§§ 211, 664), second degree burglary (§ 459), and four counts of assault with a firearm (§ 245, subd. (a)(2)).  The jury also found true firearm-use allegations under sections 12022.53, subdivision (b), and 12022.5, subdivision (a).  In a bifurcated proceeding, the trial court found Boone had suffered four prior convictions or adjudications for felonies (three for robbery and one for murder) that were serious or violent felonies within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and serious felonies under section 667, subdivision (a)(1).  The court sentenced Boone to an aggregate prison term of 262 years to life.  (*Boone I, supra*, B223335.)

Boone appealed, arguing that substantial evidence did not support his convictions for aggravated kidnapping, that the trial court erred in denying his motions under *People v. Marsden* (1970) 2 Cal.3d 118 to replace appointed counsel and under *Faretta v. California* (1975) 422 U.S. 806 to represent himself, and that the admission of certain expert witness testimony violated his Sixth Amendment right to confrontation.  We reversed one of the convictions for aggravated kidnapping, modified the judgment to correct an unauthorized sentence, and

otherwise affirmed the judgment. On remand the trial court reduced Boone's sentence to 105 years to life.[2]

### B. *The Superior Court Denies the Secretary's Request To Recall Boone's Sentence*

On September 8, 2022 the Secretary wrote a letter to the superior court recommending that, based on Boone's commitment offense and his conduct in prison, the court recall Boone's sentence and resentence him under section 1172.1, subdivision (a)(1). The Secretary stated that, effective January 2019, section 1385 gave the court the discretion to strike enhancements under section 667, subdivision (a), for prior serious felony convictions. The Secretary observed that the trial court had imposed 12 such enhancements and that Boone would not be eligible for parole until 2087.

The superior court appointed counsel to represent Boone. Counsel for Boone filed a memorandum in support of the Secretary's recommendation, arguing that Boone's record of rehabilitation and plan to reenter society supported the Secretary's recommendation, that Boone's continued incarceration was no longer in the interest of justice, and that Boone did not pose an unreasonable risk to public safety if released.

---

[2] It appears the trial court did not follow the direction in footnote 16 of our opinion in *Boone I* that, as a result of our decision to reverse one of the convictions for aggravated kidnapping and strike one of the firearm enhancements, the aggregate prison term for Boone should be 195 years to life. (*Boone I, supra,* B223335.)

4

At the hearing counsel for Boone argued that Boone had served 13 years of his sentence, that he had not violated any prison rules and had participated in self-help programs, and that prison officials had commended him for his work and positive behavior.  Counsel acknowledged that Boone had a prior "super strike" (a juvenile court adjudication for murder), but stated that, given Boone's age (64 years old) and his physical disabilities, he did not pose a risk to public safety.  The prosecutor argued that Boone posed an undue risk of danger to public safety because he had two convictions or adjudications for felonies that qualified as super strikes, the murder he committed as a juvenile and the aggravated kidnapping conviction in this case.  The prosecutor added that Boone had three other robbery convictions involving firearms, as well as a federal conviction for armed robbery of a post office, all of which demonstrated what he was "likely to do once he is out in the community."

The superior court stated that, although Boone had "done well within the institution," the court remembered "this particular case" and found the crime "was an egregious and aggravated offense."  The court reviewed Boone's criminal history and stated:  "What really bothers me about this case is the continued use of firearms when [Boone is] out.  You cannot ignore that.  You can't pretend it's not happening.  And outside of prison and inside of prison are two completely different things."  The court ruled it could not "in good conscience possibly think of returning him to society when he has served 13 years of a 105-year[-to-life] sentence" (which, as noted, should have been a 195-to-life sentence) and expressed concern Boone "apparently knows how to arm himself."  The court determined Boone "would clearly" endanger public safety if the court allowed his release.

The court denied the request of the Secretary to recall his sentence, and Boone timely appealed.

## DISCUSSION

Boone does not argue the superior court erred in finding he currently poses an unreasonable risk of danger to public safety. Instead, he contends that, when the Secretary asked the superior court to recall his sentence and resentence him under section 1172.1, subdivision (a)(3)(A), the statute required the court to consider reducing his sentence. According to Boone, the court "is required under section 1172.1, subdivision(a)(3)(A) to consider a reduction in the sentence upon receiving a recommendation from the Secretary even though it declines to vacate the conviction and release the defendant under section 1172.1, subdivision(a)(3)(B)." Boone asserts "the plain language of the statute . . . requires the court to at least consider reduction of the sentence after the Secretary submits a recommendation for recall." The text of section 1172.1 does not support Boone's contention.

### A.     *Applicable Law and Standard of Review*
"'""Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous."'"" (*People v. Pillsbury* (2021) 69 Cal.App.5th 776, 784; see *People v. McCallum* (2020) 55 Cal.App.5th 202, 211-212 ["'""We interpret

6

relevant terms in light of their ordinary meaning, while also taking account of any related provisions and the overall structure of the statutory scheme to determine what interpretation best advances the Legislature's underlying purpose."'"].) "The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961; see *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082; *McCallum*, at p. 211.)

> B. *Section 1172.1 Does Not Require the Court*
> *To Consider Reducing the Defendant's Sentence if the*
> *Court Determines the Defendant Poses an*
> *Unreasonable Risk of Danger to Public Safety*

Section 1172.1, subdivision (a)(1) (former section 1170, subdivision (d)(1)),[3] authorizes the superior court, at any time upon the recommendation of (among others) the Secretary, to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater

---

[3] In January 2022 the Legislature moved former section 1170, subdivision (d)(1), to former section 1170.03. The Legislature clarified that, when recalling a sentence and resentencing the defendant, the court should apply "any changes in law that reduce sentences or provide for judicial discretion" and added a presumption in favor of recall and resentencing. (See former § 1170.03, subds. (a)(2), (b)(2); *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.) In June 2022 the Legislature renumbered former section 1170.03 to section 1172.1, but made no substantive changes to the statute. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 818.)

than the initial sentence."[4]  (See *People v. Loper* (2015) 60 Cal.4th 1155, 1165; *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040; *People v. McCallum*, *supra*, 55 Cal.App.5th at p. 205-206.)

When the Secretary asks the court to recall the defendant's sentence and resentence the defendant,[5] section 1172.1, subdivision (b)(1), prescribes the procedures the court must follow.  Section 1172.1, subdivision (b)(2), provides:  "There shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (See *People v. Vaesau* (2023) 94 Cal.App.5th 132, 143.) Section 1170.18, subdivision (c), defines an "'unreasonable risk of danger to public safety'" as "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."  "This 'subdivision of section 667 identifies eight types of particularly serious or violent felonies, known colloquially as "super strikes."'"  (*People v. Braggs*, *supra*,

---

[4]     The Board of Parole Hearings (for a defendant in prison), the county correctional administrator (for a defendant in jail), the district attorney (of the county where the defendant was sentenced), or the attorney general (if the Department of Justice originally prosecuted the case) may also make the recommendation.  In addition, the court on its own motion may recall the sentence and resentence the defendant.  (§ 1172.1, subd. (a)(1).)

[5]     Or any one of the other executive branch officials listed in section 1172.1, subdivision (a)(1) (but not the court on its own motion).

85 Cal.App.5th at p. 818; see § 667, subd. (e)(2)(C)(iv).)  The list
includes any "homicide offense, including any attempted
homicide offense, defined in Sections 187 to 191.5, inclusive," and
any "serious or violent felony offense punishable in California by
life imprisonment or death."  (§ 667, subd. (e)(2)(C)(iv); see
*Braggs*, at p. 818, fn. 5.)  Section 1172.1, subdivision (a)(3),
provides that, when the court recalls a defendant's sentence, the
court may, in the interest of justice:  "(A) Reduce a defendant's
term of imprisonment by modifying the sentence.  [¶]  (B) Vacate
the defendant's conviction and impose judgment on any
necessarily included lesser offense or lesser related offense,
whether or not that offense was charged in the original pleading,
with the concurrence of the defendant, and then resentence the
defendant to a reduced term of imprisonment."[6]

The language of section 1172.1, subdivision (b)(2), provides
that the presumption favoring recall and resentencing is
overcome where, as here, the court finds the defendant poses an
unreasonable risk of danger to public safety (a finding Boone does
not challenge).  Because the court made this finding and did not
recall Boone's sentence and resentence him, section 1172.1,
subdivision (a)(3)(A), which authorizes the "resentencing court" to

---

[6]     At the time of Boone's hearing, section 1172.1,
subdivision (a)(3)(B), authorized the court to vacate the
defendant's conviction and impose judgment on any necessarily
included lesser offense or lesser related offense, "with the
concurrence of both the defendant and the district attorney of the
county in which the defendant was sentenced."  Effective
January 1, 2024, section 1172.1, subdivision (a)(3)(B), provides
the court may vacate the defendant's conviction and impose
judgment on a lesser offense "with the concurrence of the
defendant."

reduce a defendant's term of imprisonment, did not apply. Contrary to Boone's assertion, nothing in section 1172.1 requires the superior court to consider reducing the defendant's sentence after the court has found that releasing the defendant will endanger public safety. And we may not read such a requirement into the statute. (See *People v. Vaesau, supra,* 94 Cal.App.5th at p. 150 ["'it is not the proper function of the courts to supply legislative omissions from a statute in an attempt to make it conform to a presumed intention of the Legislature not expressed in the statutory language'"]; *People v. Superior Court* (2023) 87 Cal.App.5th 373, 379 ["[t]he court ascertains and declares what is in the statute; it does not omit what has been inserted or insert what has been omitted"]; *People v. Bell* (2015) 241 Cal.App.4th 315, 342 ["when construing 'any statute, we may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does'"].) Where the court has found releasing the defendant would endanger the public, there is no point in requiring the court to consider whether to reduce his or her sentence.

Our rejection of Boone's proposed interpretation of section 1172.1, subdivisions (a)(3)(A) and (b)(2), is supported by the language of section 1172.1, subdivision (a)(1). (See *In re N.R.* (2023) 15 Cal.5th 520, 538 [courts "do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment" (internal quotation marks omitted)]; *People v. Curiel* (2023) 15 Cal.5th 433, 461 [courts "must harmonize the various parts of a statutory enactment . . . by considering the particular clause or section in

10

the context of the statutory framework as a whole" (internal quotation marks omitted)].) The order in which the phrases "recall the sentence" and "resentence the defendant" appear shows the Legislature contemplated two distinct steps, first recall, then resentence. (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 456 ["[o]nce the sentence and commitment have validly been recalled," former section 1170, subdivision (d), "authorizes the court to 'resentence . . . *in the same manner as if [the defendant] had not previously been sentenced*'"]; *People v. E.M.*, *supra*, 85 Cal.App.5th at p. 1082 ["'A trial court, upon receiving a section 1170, subdivision (d)(1) letter from the [Secretary], has broad discretion whether to recall the existing sentence and resentence the incarcerated individual.'"]; *People v Pillsbury*, *supra*, 69 Cal.App.5th at p. 785 ["once the recommendation was made by the Secretary, it was within the authority of the trial court to recall [the] defendant's sentence and then resentence him by exercising its discretion to dismiss or strike the firearm enhancement"].) If the superior court decides not to recall the defendant's sentence because the defendant poses an unreasonable risk of danger to public safety, that is the end of the court's obligation to consider the Secretary's request; the court does not consider resentencing the defendant. As the People put it, "regardless of whether the court might reduce [Boone's] sentence to time-served or to something more than that but less than 105-years-to-life, the court would first have to determine that he did not pose an undue risk of dangerousness."

Similarly, the language of section 1172.1, subdivision (a)(2), which requires the resentencing court to apply any ameliorative legislation, confirms that the court considers whether to apply such legislation only after recalling the defendant's sentence.

11

Section 1172.1, subdivision (a)(2) states that, "in recalling and resentencing under this subdivision," the court "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." The qualifying phrase that precedes the requirement makes clear the requirement does not apply if the court does not recall the defendant's sentence for resentencing. (See *People v. McMurray*, *supra*, 76 Cal.App.5th at p. 1041 ["The legislative history [of former section 1170.03] . . . indicates that [the statute] was intended to clarify certain aspects of former section 1170(d)(1), . . . including that, "'when a sentence is recalled or reopened for any reason, in resentencing the defendant trial courts must apply 'any changes in law that reduce sentences or provide for judicial discretion.'""].)

Boone argues that this interpretation of section 1172.1 would thwart the "express goal of section 1172.1," which "is to promote uniformity in sentencing," and that, instead of "having a resentencing hearing where the disparity would hopefully be remedied, a defendant would instead have to show that he is not a risk to public safety if immediately released in order to be resentenced." But section 1172.1, subdivision (b)(2), requires the court to assess whether the defendant poses a danger to the public "currently," not in five years, 60 years (the total of Boone's 12 enhancements under section 667, subdivision (a)), 45 years (105 – 60), or 135 years (195 – 60). The superior court found there was an unreasonable risk of danger to public safety if, in Boone's words, the court "immediately released" him. Once the court made that determination, its finding of current danger overcame the presumption in favor of recall and resentencing,

12

and the court properly denied the Secretary's request.  Nothing in the language of section 1172.1, subdivision (b)(2), refers to correcting disparities in sentencing.  (Cf. *Dix v. Superior Court, supra*, 53 Cal.3d at p. 456 ["The statutory language [of former section 1170, subdivision (d)] does not link *recall* with disparity at all, and declares only that any *resentence* ultimately imposed shall *apply* the Judicial Council's sentencing criteria so as to minimize disparity."].)

## DISPOSITION

The order denying the Secretary's request to recall Boone's sentence and resentence him is affirmed.


SEGAL, Acting P. J.


We concur:



FEUER, J.                         MARTINEZ, J.


13